UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
|    MICHAEL JOHN BADEN | : |
|    aka MIKE BADEN, | : |
|    aka MICHAEL BADEN, JR. and | : CHAPTER 13 |
|    NOEL FRANCINE BADEN, | : |
|    aka NIKI BADEN, | : |
|        Debtors | : CASE NO. : 5-07-bk-51664-JJT |
| | : |
| CHARLES J. DeHART III, ESQUIRE | : |
| STANDING CHAPTER 13 TRUSTEE, | : |
| Objectant | : |
| | : |
| vs. | : |
| | : |
| MICHAEL JOHN BADEN | : |
| aka MIKE BADEN, | : |
| aka MICHAEL BADEN, JR. and | : |
| NOEL FRANCINE BADEN, | : |
| aka NIKI BADEN, | : |
| Respondents | : |

STANDING CHAPTER 13 TRUSTEE'S BRIEF
IN SUPPORT OF OBJECTIONS TO CONFIRMATION
OF AMENDED CHAPTER 13 PLAN

FACTS

On July 6, 2007, debtors filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code. Among the documents prepared, debtors filed Form B22C to calculate Monthly Disposable Income as is required under §1325(b) of the Code. Line 8 of Form B22C directed debtors to declare the amount of unemployment compensation they received during the six calendar months prior to the filing of the bankruptcy case. Line 8 also directed debtors that if they believed the compensation received was a benefit under the Social Security Act, they were to list the amount received within Line 8 but not to include it in the computation of Current Monthly Income. The debtors listed the

unemployment compensation received by Mr. Baden in the amount of $501.33 and Mrs. Baden in the amount of $381.33 but did not include these payments in the Current Monthly Income calculation. The Trustee objected to this treatment of the payments and filed a timely objection. This brief is submitted in support of that objection.

ISSUE

Whether unemployment compensation paid to a resident of Pennsylvania is a benefit under the Social Security Act.

ARGUMENT

Section 1325(b) of the Bankruptcy Code provides that if the Trustee objects to the confirmation of a plan, the court may not confirm the plan unless it pays all of the claims or provides that all of the debtors' projected disposable income is applied during the applicable commitment period. In this case, the debtors took the second option. Under these circumstances, §1325 (b)(2) defines "disposable income" as "current monthly income" less amounts reasonably necessary to be expended for various obligations. The term "current monthly income" is defined under §101(10A)(B) to exclude "benefits received under the Social Security Act. . ." It is under this provision that debtors justify exclusion of their unemployment compensation in the calculation of their Monthly Disposable Income.

To support their position, debtors cite in their brief the decision in *In re: Sorrell*, 359 B.R. 167 (Bkrcy. S.D. Ohio, 2007). The *Sorrell* court examined the control exerted by the Department of Labor over state unemployment compensation programs such as certifying compliance with the Social Security Act, invalidation of programs that do not comply with the Social Security Act and funding provided through the Act. *Sorrell* at p. 20. This analysis, however, ignores the relative freedom given to states in administering their programs provided they comply with certain

minimums standards to receive federal funding to supplement their own funding. The U.S. Supreme Court recognized this independence early in the history of the Social Security Act. When reviewing how various states fund their programs, the Justices observed:

> A wide range of judgment is given to the several states as to the particular type of statute to be spread upon their books. For anything to the contrary in the provisions of this act they may use the pooled unemployment form, which is in effect in Alabama, California, Michigan, New York, and elsewhere. They may establish a system of merit ratings applicable at once or to go into effect later on the basis of subsequent experience. . . . They may provide for employee contributions as in Alabama and California, or put the entire burden upon the employer as in New York. They may choose a system of unemployment reserve accounts by which an employer is permitted after his reserve has accumulated to contribute at a reduced rate or even not at all. This is the system which had its origins in Wisconsin.

*Charles C. Steward Machine Co. vs. Davis*, 301 U.S. 548, 593-594, 57 S. Ct. 883, 81 L. Ed. 1279, 1294 (1937). The statutory scheme itself acknowledges the dominance of the states in this area by providing that the funds under the Social Security Act are "for the purpose of *assisting* the States in the administration of *their* unemployment compensation laws . . . " 42 U.S.C. §501. [emphasis added]

The *Sorrell* court continues by asserting that unemployment compensation exists only if states comply with the Social Security Act. *Sorrell* at p. 21. This conclusion is clearly incorrect in that §503 of the Social Security Act only permits the Secretary of Labor to terminate federal funds if a state does not comply with the Act. And while the *Sorell* decision cites the common funding source of the Social Security Act, the passage in *Davis* previously cited dispels any unity in funding due to all of the independent schemes available to states to fund their programs.

The *Sorrell* decision continues by citing the Supreme Court decision in *California Dept. Of Human Resources Development v. Java*, 402 U.S. 121, 91 S. Ct. 1347 (1971) when it wrote that the purpose of the Social Security Act was to assist newly unemployed workers tide themselves over

until work could be found. However, the conclusion that unemployment compensation is therefore a benefit under the Act puts the cart before the horse since a state "is free, without breach of an agreement, to change her system overnight. No officer or agency of the national Government can force a compensation law upon her or keep it in existence." *Davis, supra.*, 301 U.S. at 595, 81 L. Ed. at 1295. Thus while the purpose of the federal program was to provide a cart to carry a funding mechanism for unemployment programs, the true horse of the program is the state system which provides the substance for the program or no program at all if it chooses. Likewise the *Sorrell* argument that the lack of specificity in its reference to the Social Security Act indicates Congress' intent to exclude all of the programs mentioned in the Act is completely dependent upon gleaning Congress' understanding that unemployment compensation is a benefit under the Social Security Act as opposed to a program which assists states in providing benefits to its own citizens. As indicated previously, the *Sorrell* view is contrary to the statutory and judicial understandings of the unemployment compensation system.

The other decision cited by debtors is *In re: Munger*, 370 B.R. 21 (Bkrcy. D. Mass., 2007). In addition to citing the reasoning in *Sorrell*, which is refuted above, the *Munger* decision points to §522(d)(10)(A) of the Code which exempts the debtor's right to receive "a social security benefit, unemployment compensation, or a local public assistance benefit." The *Munger* court thus concludes that "a benefit under the Social Security Act" is broader than "a social security benefit" and that therefore Congress intended unemployment benefits to be excluded. However, the fact that Congress provided exemptions for social security benefits *and* unemployment benefits manifests Congress' intent to treat them as different entities and exclude unemployment compensation from the realm of social security benefits.

It is clear that Congress in the Social Security Act promulgated the provisions for the purpose of "assisting" the state unemployment compensation programs (see 42 U.S.C. §501 cited earlier) and the U.S. Supreme Court has echoed that interpretation. At least one Pennsylvania court has reached the same conclusion. In the decision of *U.C.B.R. vs. Selby*, 25 Pa. Cmwlth. 273, 360 A. 2d 254 (1976), the Commonwealth Court saw the federal regulations under the Social Security Act as requirements "which must be satisfied to enable federal participation in the administration of state unemployment compensation programs." Thus, while the federal government provides some funding and imposes regulations to receive that funding, the programs are recognized as state programs. The benefit comes from the states with encouragement from the federal government. Similar to federal highway funds, the federal government provides funds to build highways and imposes requirements upon the states to receive them, but the state provides the benefit by administering the program using some federal funds.

Conclusion

The federal government recognizes that unemployment benefits are provided by the states and not by the Social Security Act. This is clear through analysis of §501 of the Social Security Act and §522 of the Bankruptcy Code which distinguishes between social security benefits and unemployment compensation. The judiciary likewise agrees. Pennsylvania courts have also fallen in line with this interpretation. Unemployment compensation benefits are therefore not benefits under the Social Security Act and therefore must be included on Form B22C in the calculation of Monthly Disposable Income. The objections of the Trustee must therefore be sustained and an amended Form B22C and amended plan should be filed in 30 days.

                              Respectfully submitted,

                              Charles J. DeHart III, Esquire
                              Standing Chapter 13 Trustee

BY:                   <u>/s/James K. Jones, Esquire</u>
                              8125 Adams Dr., Ste.A
                              Hummelstown, PA 17036
                              (717) 566-6097
                              FAX: (717) 566-8313
                              jjones@pamd13trustee.com

CERTIFICATE OF SERVICE

      AND NOW, this 14th day of November, 2007, I hereby certify that I have served the within Brief by electronically notifying parties or by depositing a true and correct copy of the same in the United States Mail at Harrisburg, Pennsylvania, postage prepaid, first class mail, addressed to the following:

Carlo Sabatini, Esquire
142 North Washington Avenue, Suite 800
Scranton, PA 18503

      /s/Deborah A. Behney
      Office of Charles J. Dehart, III
      Standing Chapter 13 Trustee