IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| MICHAEL JOHN BADEN and<br>NOEL FRANCINE BADEN | : | BANKRUPTCY NO.: 5-07-bk-51664 |
| DEBTORS | : | |
| CHARLES J. DeHART, III, ESQUIRE<br>STANDING CHAPTER 13 TRUSTEE, | : | {**Nature of Proceeding**: Objection to Confirmation of Amended Chapter 13 Plan} |
| OBJECTANT | : | |
| vs. | : | |
| MICHAEL JOHN BADEN and<br>NOEL FRANCINE BADEN | : | |
| RESPONDENTS | : | |

# OPINION[1]

### FACTS

On July 6, 2007, Michael and Noel Baden ("Debtors") filed a Voluntary Petition for relief pursuant to Chapter 13 of the Bankruptcy Code. The Debtors filed Official Form B22C to calculate monthly disposable income as required by 11 U.S.C. § 1325(b). Line 8 of Official Form B22C directed the Debtors to declare the amount of unemployment compensation received in the six months prior to filing of the bankruptcy petition. Line 8 also instructed Debtors that if they believed the unemployment compensation was a benefit received under the Social Security Act, they were to list the amount received but not include it in the calculation of current monthly income ("CMI").

---

[1] Drafted with the assistance of Amanda Height, Extern Law Clerk.

The Debtors listed unemployment compensation received by Mr. Baden in the amount of $501.33 and unemployment compensation for Mrs. Baden in the amount of $381.33 but did not include these payments in the CMI calculation.

On September 6, 2007, Charles J. DeHart, III, the Trustee, filed an Objection to the confirmation of the Debtors' Chapter 13 plan. The Trustee asserted that this treatment of unemployment compensation violates 11 U.S.C. § 1322(a)(1), which requires that Debtor submit all or such portion of future income to the Trustee as is necessary for the execution of the plan.

## POSITION OF THE PARTIES

According to 11 U.S.C. § 1325(b), when confronted with an objection, a debtor must either pay all claims in full or dedicate sufficient funds to the plan as measured by so much of "disposable income" as is received during the applicable commitment period.

The Trustee has filed an Objection to the Debtors' Plan alleging that the monthly disposable income set forth on Official Form B22C is inaccurate because it does not include either Debtors' unemployment compensation in the calculation. The Trustee argues that unemployment compensation qualifies as calculable income and, therefore, should be included when determining Debtors' monthly disposable income.

The Debtors argue that unemployment compensation should not be included in the calculation of their monthly disposable income because the Badens' unemployment compensation constitutes a "benefit received under the Social Security Act" and should be excluded from the calculation of CMI pursuant to 11 U.S.C. § 101(10A). The Debtors rely solely on the only existing cases on point in asserting that CMI, calculated on their Form B22C, is accurate. *See In re Munger,* 370 B.R. 21(Bankr. D.Mass. 2007)(holding

that unemployment compensation is a benefit received under the Social Security Act and therefore not included in the calculation of debtor's CMI); *In re Sorrell*, 359 B.R. 167 (Bankr. S.D.Ohio 2007)(same).

The Trustee objects pursuant to 11 U.S.C. § 1322(a)(1), arguing that the Court should require Debtors to file an amended Official Form B22C and an amended plan which includes Debtors' unemployment compensation in the computation of CMI. In pertinent part, the Bankruptcy Code defines "current monthly income" as:

> (A) . . . income from all sources that the debtor receives (or in a joint case that the debtor and the debtor's spouse receive) without regard to whether such income is taxable
> . . .
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent, but excludes benefits received under the Social Security Act . . . .

11 U.S.C. § 101(10A)

Prior to the adoption of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, unemployment compensation was included in the calculation of income. *In re Hickman*, 104 B.R. 374, 377 (Bankr. D.Colo. 1989); *In re Compton*, 88 B.R. 166, 167 (Bankr. S.D.Ohio 1988); *In re Overstreet*, 23 B.R. 712, 713-14 (Bankr. W.D.La. 1982). Currently, Official Form B22C allows the debtor to decide if his or her unemployment compensation is included in the calculation of CMI.

The Debtors rely on the phrase "excludes benefits received under the Social Security Act" in § 101(10A)(B) of the Bankruptcy Code to assert that their original computation of CMI should exclude, also, their unemployment compensation benefit.

The Debtors advance *Sorrell* and *Munger* in arguing that Debtors' unemployment compensation is a benefit received pursuant to the Social Security Act. In *Sorrell*, the

court held that unemployment compensation should be excluded from the computation of CMI.

First, the *Sorrell* court addresses the argument that because unemployment compensation is an "indirect payment" administered by the state and not a direct payment under the Social Security Act, Congress intended for it to be included in the calculation of CMI. *In Re Sorrell*, 359 B.R. at 181. The court rejected this distinction between "direct" and "indirect" payments because the plain language of the statute does not distinguish between the two, but uses the "unambiguously broader term 'benefits.'" *Id.* at 181. The court further stated that although unemployment compensation is undisputedly administered by the state, the Social Security Act provides a common funding source and common regulations for all unemployment programs. *Id.* at 182.

Next, the *Sorrell* court looked to the purpose of the Social Security Act to support its conclusion that unemployment compensation is a benefit received pursuant to the Social Security Act. The court based this conclusion on the Supreme Court's recognition that:

> The purpose of the [Social Security] Act was to give prompt if only partial replacement of wages to the unemployed, to enable workers "to tide themselves over, until they get back to their old work or find other employment, without having to resort to relief." Unemployment benefits provide cash to a newly unemployed worker "at a time when otherwise he would have nothing to spend," serving to maintain the recipient at subsistence levels without the necessity of his turning to welfare or private charity.

*In re Sorrell*, 359 B.R. at 182 (citing *California Dept. Of Human Resources Dev. v. Java*, 402 U.S. 121, 131-32 (1971)).

The *Sorrell* court reasoned that if the purpose of the Social Security Act was to replace lost wages, then unemployment compensation should be excluded from the calculation of CMI as a "benefit received under the Social Security Act." *Id.* at 182.

Finally, the court examined the language of § 101(10A) in relation to other references to the Social Security Act found in BAPCPA. The court recognized that in other sections of the Bankruptcy Code, for example § 362(b)(2), § 704(c)(1)(A)(i), and § 1302(d)(1)(A)(I), the provisions reference specific sections of the Social Security Act, not the Act in general. *In re Sorrell*, 359 B.R. at 182-83. The court reasoned that Congress could have limited the scope of the exclusion by identifying specific provisions to which the exclusion was applicable, but that the broad reference to the Social Security Act in § 101(10A)(B) demonstrates a Congressional intent to exclude all Social Security Act benefits from the calculation of CMI. *Id.* at 183.

The court in *Munger* relied heavily on the holding and reasoning in *Sorrell* in concluding that unemployment compensation is a "benefit received under the Social Security Act" and should not be included in the calculation of a debtor's CMI. *See In re Munger*, 370 B.R. at 23-24. In addition to its reliance on *Sorrell*, the court referenced other sources which supported the *Sorrell* interpretation. The court cited to *Collier on Bankruptcy,* which states that in addition to social security benefits, unemployment benefits, provided for in multiple sections of the Social Security Act, are among the types of income excluded from the calculation of CMI. *In re Munger*, 370 B.R. at 25 (citing *Collier on Bankruptcy* 101-81 (Alan N. Resnick & Henry J. Sommer eds., 2007)). The court also looked to a commentator arguing that the Supremacy Clause supports including unemployment compensation as a benefit received under the Social Security Act. That authority contended that because federal law governs unemployment programs, "unemployment compensation is ultimately a benefit received under the Social Security Act." *In re Munger*, 370 B.R. at 25 (quoting Allard, David W. Et al., *Means Test – Can it*

*Work?*, American Bankruptcy Institute, 13th Annual Central States Bankruptcy Workshop (2006)).

The *Munger* court also conducted its own examination of the statutory language of the Bankruptcy Code. The court pointed to language in the Bankruptcy Code that distinguishes between "a social security benefit" and "unemployment compensation" as evidence of Congressional intent to use "Social Security Act" as a more inclusive term. *See* 11 U.S.C. § 522(d)(10)(A).

This Court is not persuaded that this distinction is indicative of Congressional intent to include unemployment compensation as a social security benefit. To the contrary, this Court views the distinction between unemployment compensation and social security benefits as a manifestation of Congress' intent that the Bankruptcy Code treat the current and temporary replacement of wages administered by the state differently than future benefits associated with old age, ordinarily administered by the federal government.

Commentators do disagree as to whether unemployment compensation should be included in the computation of CMI. Judge Wedoff argues that including unemployment compensation as a benefit "received under the Social Security Act" is a strained interpretation. Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr. L.J. 231, 247 (Spring, 2005). Judge Wedoff contends that unemployed individuals do not receive "benefits under the Social Security Act," but rather "under programs adopted by their states . . . ." *Id.* at 247. The Trustee in this case also contends that unemployment is a state run program that merely receives assistance from the federal government, similar to the federal highway funds which are provided by the federal government, but the

benefit is provided by the state in "administering the program using some federal funds." (Trustee's Brief at 5). The Trustee asserts that Congress did not intend to exclude unemployment compensation from the calculation of CMI because the view that unemployment compensation is a benefit under the Social Security Act is contrary to the statutory and judicial understanding of the Act. (Trustee's Brief at 4). The provisions of 42 U.S.C. § 501 state that the funds provided by the Social Security Act are "for the purpose of assisting the States in the administration of their unemployment compensation laws . . . ." Additionally, the Trustee points to Supreme Court and Pennsylvania State decisions in support of the interpretation that federal funds merely assist states in providing unemployment benefits to their own citizens. *See Charles C. Steward Machine Co. v. Davis*, 301 U.S. 548, 593-594 (1937)(acknowledging the dominance of the states in providing unemployment compensation), *See also U.C.B.R. v. Selby*, 25 Pa. Cmwlth. 273, 360 A. 2d 254 (Pa. 1976)(noting that the federal regulations under the Social Security Act were merely requirements that must be met to enable federal participation in state unemployment programs).

Ordinarily, a court will not look beyond the plain language of the provision when construing a statute that is clear on its face. *See, BedRoc Ltd., LLC. v. United States*, 541 U.S. 176, 183 (2004). However, when the provisions are ambiguous, the court may look beyond the plain language to determine the intent of Congress in enacting the statute. *See Nat'l R. Passenger Corp. v. Nat'l Ass'n of R. Passengers*, 414 U.S. 453, 458 (1974); *But see, Brigham v. United States*, 539 F.2d 1312, 1316 n.8 (3d Cir. 1976)(stating that it is permissible for a court to use any available construction aids no matter how clear the plain language of the statute may appear). Several courts have acknowledged the lack of

clarity in the provisions of the BAPCPA. *See, e.g., In re Sorrell*, 359 B.R. at 173; *In re Paschal*, 337 B.R. 274, 277 (Bankr. E.D.N.C. 2006); *In re Collins*, 334 B.R. 655, 658 (Bankr. D.Minn. 2005). The provision at issue here is also unclear in that there is no "definitive guide" to the term "benefits," leaving the statute open to varying interpretations. *Compare In re Sorrell*, 359 B.R. at 181 and *In re Munger*, 370 B.R. at 26 *with* Eugene R. Wedoff, *Means Testing in the New §707(b)*, 79 Am. Bankr. L.J. 231, 247 (Spring, 2005). A "benefit received under the Social Security Act" may refer only to direct payments made by the federal government or it may include indirect payments made by state run programs. The inconsistent language used by Congress also makes it difficult to interpret § 101(10A). It is unclear whether a "benefit received under the Social Security Act" was meant to be all encompassing since it did not refer to a specific provision of the act or whether it was an alternative way of referring to social security benefits, which are distinguished from unemployment compensation in other provisions. Since the language of this provision is unclear, it is necessary to look beyond the plain language to correctly interpret the statute.

An examination of the legislative history of the BAPCPA provides little assistance in determining Congress's intent. Although there is a lengthy legislative history dating back to 1997, information on the final version is sparse. *See generally* H.R. 250, 105th Cong. (1997). However, a thorough analysis of the entire legislative history reveals that Congress had two primary concerns in enacting the legislation: (1) Protecting the Bankruptcy system from being abused by ensuring that those who could afford to pay their debts did pay; and (2) protecting education and retirement savings from being

drained by creditors[2]. *See, e.g.,* H.R. Rep. No. 109-31(I), at 2-3, 115 (2005); 151 Cong. Rec. S2470 (March 10, 2005); 151 Cong. Rec. S1726 (February 28, 2005). The exclusion of unemployment compensation from the calculation of CMI is incongruous with both goals. Unemployment programs provide funds to partially replace lost wages to maintain unemployed workers at a level of subsistence. These state funds provide unemployed workers with the means to pay for all of their expenses and bills until they find new employment. Allowing the unemployed to retain any excess funds they receive while failing to pay their bills runs contrary to Congress' goal of preventing abuse by those who can afford to pay a portion of their bills. Moreover, excluding unemployment compensation from the calculation of CMI does not further the Congressional goal of protecting retirement savings. The inclusion of unemployment compensation will not lead to the depletion of a future means of subsistence.

Another theory, advanced by Judge Wedoff, suggests the Internal Revenue Code may provide guidance in determining the definition of "income" because the distinction between "income from all sources" and "taxable income" in § 101(10A)(A) is similar to the Internal Revenue Code distinction between "gross income" and "taxable income." Wedoff, *supra,* at 245. The Internal Revenue Code explicitly includes unemployment compensation in the calculation of "gross income," 26 U.S.C. § 85, while excluding from the calculation Medicare, prescription drug subsidies which are provided for under the Social Security Act, 26 U.S.C. §§ 138, 139A. Additionally, the Internal Revenue Code

---

[2] "Far from signifying excessive wealth, retirement funds have become a middle class necessity, especially in light of the diminishing adequacy of social security funds and other deferred benefits. Similar to the considerations regarding the homestead, bankruptcy should not discourage what other federal policies and common sense encourage." I N.B.R.C. Rep. Ch. 1 p. 117 (Oct. 20, 1997).

does not define unemployment compensation as a benefit or payment received under the Social Security Act. *Compare* 26 U.S.C. § 85, *with* 26 U.S.C. §§ 86, 138, 139A. The use of the Internal Revenue Code for guidance is supported by Congress' reliance on the Internal Revenue Code in drafting the provisions for determining a debtor's monthly disposable income. *See* § 707(b)(2).

I also draw attention to the Report by the National Bankruptcy Review Commission, a body created in anticipation of rewriting the Bankruptcy Code. They wrote that the definition of disposable income should be amended to include *all* sources of income available to the debtor, commenting that it would not be appropriate to deduct expenses without also claiming all available funds. II N.B.R.C. Rep. Appendix F-2 p. 1 (Oct. 27, 1997).

The pre-BAPCPA definition of disposable income generally did include income from all sources according to judicial decisions rendered in that time period, in addition to the unemployment compensation cases cited heretofore, see *In re Freeman*, 86 F.3d 478, C.A.6 (Tenn.),1996 (tax refund), *In re Hagel*, 184 B.R. 793 (9th Cir. BAP 1995) (Social Security benefits), *Watters v. McRoberts*, 167 B.R. 146 (S.D.Ill. 1994) (personal injury recovery), *In re Minor*, 177 B.R. 576 (Bankr. E.D.Tenn. 1995) (workers compensation) and, *In re Cavanaugh*, 175 B.R. 369 (Bankr. D.Idaho 1994) (voluntary contributions to Section 401(k) plan). There is a general rule of statutory construction that deviations from established applications of judicial interpretation should be done with specificity. *Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 501, 106 S.Ct. 755, 759 (U.S.N.J., 1986). ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created

concept, it makes that intent specific. (Citation omitted). The Court has followed this rule with particular care in construing the scope of bankruptcy codifications.") Had Congress intended CMI to exclude unemployment compensation, I find they would have done so with greater specificity.

In considering the language of the Bankruptcy Code and Congress' intent in enacting the BAPCPA, this Court holds that unemployment compensation is not a "benefit received under the Social Security Act" and, therefore, should be included in the calculation of CMI. Accordingly, the Debtors incorrectly excluded their unemployment compensation, in the amounts of $501.33 and $381.33, from the calculation of CMI.

## CONCLUSION

For the foregoing reasons, the Objection of the Trustee pursuant to 11 U.S.C. § 1325(b) is sustained.

An Order will follow.

Date: October 30, 2008

John J. Thomas, Bankruptcy Judge
(CMS)

*This opinion is electronically signed and filed on the same date.*